IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE JOAN B.,[1]                                 2:18-cv-00956-BR

      Plaintiff,                                 OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

      Defendant.

**KATHLEEN R. DENT**
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue
Suite 2400
Portland, OR 97201-5630
(503) 778-5338

**DANIEL S. JONES**
Law Offices of Charles E. Binder and Harry J. Binder, LLP
485 Madison Avenue
Suite 501
New York, NY 10022
(212) 677-6801

      Attorneys for Plaintiff

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental party.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Valerie Joan B. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on July 8, 2014,

alleging a disability onset date of June 1, 2014.  Tr. 370-71.[1]

The application was denied initially and on reconsideration.  An

Administrative Law Judge (ALJ) held a hearing on March 24, 2017.

Tr. 235-59.  At the hearing Plaintiff was represented by an

attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on May 17, 2017, in which she

found Plaintiff was not disabled before her December 31, 2016,

date last insured and, therefore, is not entitled to benefits.

Tr. 35-54.  Pursuant to 20 C.F.R. § 404.984(d), that decision

became the final decision of the Commissioner on March 27, 2018,

when the Appeals Council denied Plaintiff's request for review.

Tr. 4-9.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on May 29, 1963, and was 53 years old at

the time of the hearing.  Tr. 370.  Plaintiff completed an

Associates Degree.  Tr. 428.  The ALJ found Plaintiff has past

relevant work experience as a front-desk clerk and janitor.

Tr. 45.

Plaintiff alleges disability during the relevant period due

to back pain, leg pain, fibromyalgia, and depression.  Tr. 260.

Except when noted, Plaintiff does not challenge the ALJ's

---

[1] Citations to the official transcript of record filed by
the Commissioner on November 2, 2018, are referred to as "Tr."

summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 43-45.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in

substantial gainful activity (SGA) from her June 1, 2014, alleged
onset date through her December 31, 2016, date last insured.
Tr. 40.

At Step Two the ALJ found Plaintiff had the severe
impairments of degenerative disc disease of the lumbar spine,
fibromyalgia, obesity, depression, and anxiety during the
relevant period.  Tr. 40.  The ALJ found Plaintiff's impairment
of hypertension was nonsevere during the relevant period.  The
ALJ also found Plaintiff's intracranial aneurysm was not a
medically determinable impairment during the relevant period.
Tr. 41.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found
Plaintiff had the RFC to perform light work during the relevant
period with the following limitations:  Plaintiff could lift and
carry 20 pounds occasionally; could lift and carry 10 pounds
frequently; could stand and/or walk for two hours in an eight-
hour workday; could sit for six hours in an eight-hour workday;
could occasionally stoop, kneel, crouch, crawl, and climb ramps
or stairs; could understand and carry out simple instructions;
and could have "no more than occasional interaction with the
general public, coworkers, and supervisors."  Tr. 42.

At Step Four the ALJ found Plaintiff was unable to perform her past work during the relevant period.  Tr. 45.

At Step Five the ALJ found Plaintiff could perform other work that existed in the national economy during the relevant period.  Accordingly, the ALJ concluded Plaintiff was not disabled from June 1, 2014, through December 31, 2016.  Tr. 47.


**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected the opinion of Christina Bright, M.D., treating rheumatologist; and (3) failed to include all of Plaintiff's limitations in her hypothetical to the VE.

**I.    The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical

evidence of the actual symptoms or their severity. *Smolen*, 80
F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if she provides clear and
convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)). General assertions that the claimant's testimony is
not credible are insufficient. *Id*. The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that during the relevant
period she could walk a block and then would have to rest because
her back ached and started to burn and her legs would "give out."
Tr. 249-50. Plaintiff stated she would have "weird shooting
pains that come in . . . the middle of [her] hips and it has
literally knocked me down." Tr. 250. Plaintiff testified she
fell to the ground at least once a week. Plaintiff noted during
the relevant period she cleaned her apartment, did her laundry,
and did her grocery shopping. Plaintiff could not stand up long
enough to cook a meal. Tr. 254. Plaintiff stated she and her
husband divorced even though they have a fairly good
relationship, but she could not live with him any longer because
"the more pain [she was] in, the nastier [she] g[ot]." Tr. 252.

Plaintiff often yelled at her ex-husband and other people and had "a really hard time controlling [her] emotions." Tr. 252. Plaintiff did not have medical insurance for almost one year during the relevant period, but she began receiving counseling and taking medications when she was put on the Oregon Health Plan. Plaintiff testified the medications, however, did not help with her mental-health issues. Plaintiff stated she was suicidal and/or homicidal during the relevant period. Plaintiff did not have any desire to be around people because she got "super, super anxious around people." Tr. 254. Plaintiff, however, interacted with her ex-husband and sister regularly.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce some of [Plaintiff's] alleged symptoms" during the relevant period, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 43. Specifically, the ALJ found the record does not support the severity of Plaintiff's back-impairment symptoms during the relevant period. The ALJ noted Plaintiff's June 2014 MRI of her lumbar spine showed minimal degenerative facets at L2-L3; minimal disc bulging with mild degenerative facets at L3-L4; and a mild disc bulge, mild right neural foraminal narrowing, and moderate left neural foraminal narrowing with a "small synovial cyst

projecting from the left facet" at L4-L5.  Tr. 811-12.  In addition, the ALJ noted the record does not reflect Plaintiff had strength or sensation loss during the relevant period.  For example, in physical examinations in June 2014 and October 2014 Plaintiff had 5/5 muscle strength "throughout the bilateral lower extremities."  Tr. 622, 845.  In March 2015 Plaintiff had a negative bilateral straight-leg raise and "no motor weakness" on examination.  Tr. 1328.  In April 2015 a nerve conduction study of Plaintiff's left leg did not reflect any "electrodiagnostic evidence of a left lower extremity motor radiculopathy, plexopathy, or monomeuropathy."  Tr. 1334.  In September 2016 x-rays of Plaintiff's lumbar spine showed only mild degenerative changes "involving the sacroiliac joints."  Tr. 1146.  The ALJ limited Plaintiff's walking, standing, and sitting as well as her ability to climb, stoop, kneel, crouch, and crawl.

In addition, although Plaintiff testified she often yelled at her ex-husband and other people and had "a really hard time controlling [her] emotions" during the relevant period, the ALJ noted the record reflects Plaintiff shopped for groceries, was able to drive, attended appointments, and interacted regularly with her ex-husband and sister.  As noted, the ALJ limited Plaintiff to "no more than occasional interaction with the general public, coworkers, and supervisors" and also limited Plaintiff to understanding and carrying out simple instructions.

The Court finds on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms during the relevant period.

## II. The ALJ did not err when she partially rejected the opinion of Dr. Bright.

Plaintiff asserts the ALJ erred when she partially rejected Dr. Bright's February 17, 2017, opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On February 17, 2017, Dr. Bright completed a Request for Medical Opinion in which she stated she had been Plaintiff's treating rheumatologist for three years. Dr. Bright stated Plaintiff suffers from fibromyalgia and her symptoms would likely increase if Plaintiff was placed in a "stressful work environment." Tr. 1395. Dr. Bright did not assess or answer questions on the Request form related to Plaintiff's specific

physical limitations.  For example, Dr. Bright did not assess
Plaintiff's ability to sit, stand, walk, lift, carry, climb,
balance, stoop, bend, kneel, crouch, reach, handle, finger, or
feel.  Tr. 1396.  Dr. Bright stated Plaintiff did not "experience
side effects from any medications that would interfere with her
ability to sustain basic attention and concentration needed to
perform even simple work tasks."  Tr. 1397.  Dr. Bright answered
"no" to whether "any of [Plaintiff's] symptoms [would] interfere
with her ability to sustain the basic attention and concentration
needed to perform even simple work tasks."  Tr. 1397.
Nevertheless, Dr. Bright stated she "[w]ould expect [Plaintiff]
to miss 16 hours . . . or more a month from even a simple and
routine sedentary job because of her impairments, symptoms,
medications, and their side effects."  Tr. 1397.

The ALJ rejected that portion of Dr. Bright's opinion in
which she stated Plaintiff would likely miss 16 hours of work or
more per month.  The ALJ noted Dr. Bright completed a Residual
Functional Capacity Form in January 2017 in which she did not
assess Plaintiff's specific physical limitations.  Dr. Bright
noted Plaintiff had daily, moderate pain.  Nevertheless,
Dr. Bright concluded in January 2017 that Plaintiff's
fibromyalgia was "stable" and "not disabling."  Tr. 517.  In
addition, the ALJ noted Dr. Bright had treated Plaintiff only
five times over three years.  *See* 20 C.F.R. § 404.1527(c)(2)(i)

("[W]e consider all of the following factors in deciding the weight we give to any medical opinion: . . . [l]ength of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Finally, Dr. Bright's February 2017 opinion was brief and conclusory. The Ninth Circuit has made clear that an "'ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)(quoting *Thomas v. Barnhart*, (9th Cir. 2002)).

Accordingly, on this record the Court concludes the ALJ did not err when she rejected that portion of Dr. Bright's February 2017 opinion relating to the number of hours of work she expected Plaintiff to miss.

**IV. The ALJ erred when she failed to include all of Plaintiff's limitations in her hypothetical to the VE.**

Plaintiff alleges the ALJ erred when she failed to pose a hypothetical to the VE that accurately described all of Plaintiff's mental limitations as found by the ALJ. Specifically, the ALJ found Plaintiff has moderate difficulties in concentration, persistence, and pace. At the hearing the hypothetical that the ALJ posed to the VE only limited Plaintiff

to understanding and to carrying out simple instructions.
Plaintiff, therefore, asserts the "hypothetical failed to include
any limitations in [Plaintiff's] ability to concentrate over a
period of time, persist at tasks, or maintain a particular work
pace over the course of a workday or workweek." Pl.'s Brief
at 20.

In *Brink v. Commissioner Social Security Administration* the
Ninth Circuit explained:

> A hypothetical question posed to a vocational
> expert must "include all of the claimant's
> functional limitations, both physical and mental."
> *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir.
> 1995). Here, the administrative law judge ("ALJ")
> accepted medical evidence that Brink has moderate
> difficulty maintaining concentration, persistence,
> or pace. However, the ALJ's initial hypothetical
> question to the vocational expert referenced only
> "simple, repetitive work," without including
> limitations on concentration, persistence or pace.
> This was error.
>
> The Commissioner's contention that the phrase
> "simple, repetitive work" encompasses difficulties
> with concentration, persistence, or pace is not
> persuasive. Indeed, repetitive, assembly-line
> work of the type described by the expert might
> well require extensive focus or speed.
>
> * * *
>
> Although the ALJ accepted that [the plaintiff] has
> moderate difficulty with concentration,
> persistence, or pace, he nevertheless concluded,
> contrary to the vocational expert's testimony,
> that [the plaintiff] can perform certain light
> work. This conclusion was based on an incomplete
> hypothetical question, and is not supported by
> substantial evidence. The hypothetical question
> to the vocational expert should have included not
> only the limitation to "simple, repetitive work,"

>       but also [the plaintiff's] moderate limitations in
>       concentration, persistence, or pace.

343 F. App'x 211, 212 (9th Cir. Aug. 18, 2009).

Defendant contends *Brink* should not inform the Court's

decision because it is an unpublished case.  Defendant asserts

the Court should instead apply the analysis in *Stubbs-Danielson

v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  In *Brink*, however, the

Ninth Circuit distinguished *Stubbs-Danielson*:

>       In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th
>       Cir. 2008), we held that an "assessment of a
>       claimant adequately captures restrictions related
>       to concentration, persistence, or pace where the
>       assessment is consistent with the restrictions
>       identified in the medical testimony."  *Id*. at
>       1174.  The medical testimony in *Stubbs-Danielson*,
>       however, did not establish any limitations in
>       concentration, persistence, or pace.  Here, in
>       contrast, the medical evidence establishes, as the
>       ALJ accepted, that Brink does have difficulties
>       with concentration, persistence, or pace.
>       *Stubbs-Danielson*, therefore, is inapposite.

343 F. App'x at 212.  In *Betancourt v. Astrue*, No. EDCV 10-0196

CW, 2010 WL 4916604 (C.D. Cal. Nov. 27, 2010), the ALJ accepted

medical evidence of plaintiff's limitations in maintaining

concentration, persistence, or pace.  The ALJ included in his

hypothetical to the VE the plaintiff's restriction to "simple,

repetitive work," but the ALJ did not include restrictions based

on the plaintiff's limitations with concentration, persistence,

or pace.  The court concluded the ALJ erred because his

conclusion was "based on an incomplete hypothetical question and

unsupported by substantial evidence."  2010 WL 4916604, at *3-4.

17 - OPINION AND ORDER

*See also Melton v. Astrue*, No. 09–CV–1000–BR, 2010 WL 3853195, at *8 (D. Or. Sep. 28, 2010), *aff'd. sub nom. Melton v. Comm'r Soc. Sec. Admin.*, 442 F. App'x 339 (9ᵗʰ Cir. 2011)(The ALJ erred in her assessment of plaintiff's RFC because the assessment included the plaintiff's restriction to simple, repetitive tasks, but did not include the plaintiff's mild-to-moderate limitations in maintaining concentration, persistence, or pace); *Cavanaugh v. Colvin*, No. CV 13–1222–TUC–JAS (DTF), 2014 WL 7339072, at *3 (D. Ariz. Dec. 23, 2014)("In *Stubbs-Danielson*, the ALJ did not make an explicit finding that the claimant had pace limitations. . . . In contrast, in Cavanaugh's case, the ALJ made a finding that she had a concentration, persistence, or pace deficiency."); *Juarez v. Colvin*, No. CV 13–2506 RNB, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 20, 2014)("Here, the ALJ expressly found, consistent with the opinion of a state agency review physician, that plaintiff had moderate limitation in maintaining concentration, persistence, and pace. . . . Accordingly, under *Brink*, whose reasoning the Court finds persuasive, the ALJ's RFC determination should have included not only the limitation to unskilled work but also a moderate limitation in maintaining concentration, persistence, and pace.").

Here, as in *Brink, Betancourt, Melton, Cavanaugh,* and *Juarez,* the ALJ found Plaintiff had moderate deficiencies in concentration, persistence, or pace and expressly included

functional limitations based on that finding in Plaintiff's RFC. The ALJ, however, only included in her hypothetical to the VE a limitation to "understanding and carrying out simple instructions."  Tr. 256.

On this record, therefore, the Court concludes ALJ erred when she did not expressly include limitations on Plaintiff's concentration, persistence, or pace in her hypothetical to the VE.


## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such

> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a

single question: Whether the ALJ would have to award benefits if

the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are

necessary because the ALJ did not include Plaintiff's limitations

in her hypothetical to the VE. The VE's analysis of Plaintiff's

ability to perform other jobs that exist in the national economy,

therefore, was incomplete. Thus, the Court concludes a remand

for further proceedings consistent with this Opinion and Order is

required to permit the ALJ to pose a complete hypothetical to the

VE.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter pursuant to sentence four of

28 U.S.C. § 405(g) for further proceedings consistent with this

Opinion and Order.

IT IS SO ORDERED.

DATED this 11th day of June, 2019.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge